DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BRIAN M. RANKIN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-166

[September 16, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Robinson, Judge; L.T. Case No. 13-002195CF10A.

Carey Haughwout, Public Defender, and Richard B. Greene, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Senior Assistant Attorney General, West Palm Beach, for appellee.

GROSS, J.

Central to this appeal is whether the trial judge impermissibly considered appellant Brian Rankin's lack of "remorse" and failure to accept responsibility when imposing his sentence. At sentencing, Rankin sought a downward departure sentence, emphasizing his rehabilitation and ability to maintain a productive future lifestyle. Since Rankin injected the issue of his rehabilitation into the case, the trial court permissibly could consider all factors relevant to his rehabilitation, including his remorse or lack of it. Accordingly, the court's comments did not constitute error.

### *Factual Background*

On March 14, 2013, the State charged Rankin with two felonies: burglary of an occupied dwelling and possession of burglary tools. The core facts were that Rankin went to a neighbor's home in the early evening and pounded on windows and doors, asking to be let inside. When the neighbors failed to oblige, Rankin tried to pry a back window open with a

pair of trimmers. The neighbors called the police and Rankin was arrested. Rankin took the case to trial and lost, resulting in a conviction of possession of burglary tools, a third-degree felony, and a conviction of the lesser included offense of misdemeanor criminal trespass. Because the State expressed its intention to have Rankin sentenced as an habitual felony offender, the trial court ordered a pre-sentence investigation ("PSI") and set sentencing for a later date.

At the sentencing hearing, the State called witnesses to establish Rankin's three prior felony convictions. In addition, the State presented testimony from the victims about how Rankin's actions changed their lives for the worse.

For the defense, Rankin called his mother, who testified that Rankin is not a "hardened criminal" but rather "someone that makes poor choices and drinks too much." The mother further explained that Rankin is "very helpful" in her Key Largo neighborhood, that many wished to see him return, and that he had a job waiting for him should he avoid prison. Rankin then testified that he "fe[lt] bad about the way people fe[lt] about" him "[b]ecause [he] fe[lt] responsible." Rankin explained that he is a "good person" but he had been drinking the day of the incident. As a result, Rankin begged the court "for mercy" and hoped the court would "see that [he is] a good person," assuring that he would "do good," "stay out of trouble[,] and work."

After both sides rested, defense counsel informed the court that Rankin's scoresheet for the possession of burglary tools charge reflected 44.4 points, placing his lowest permissible sentence at 12.3 months incarceration. However, the scoresheet incorrectly assessed an additional seven points, meaning Rankin was actually eligible for a non-state prison sentence. Defense counsel argued against habitualization and requested a downward departure sentence to time served[1] or supervision. Defense counsel did not articulate a specific statutory ground for departure. The State countered that there was "no legal reason to depart from the guidelines" and that Rankin should be sentenced as an habitual felony offender to ten years imprisonment.

After considering the arguments, the trial court sentenced Rankin as an habitual felony offender to four years imprisonment on the possession of burglary tools conviction. In ruling, the trial court made the following remarks:

> Okay. The Court has reviewed pre-sentence investigation, reviewed this file and I find that the State has provided proper

---

[1]Rankin had spent 79 days in the county jail.

> notice of [Rankin's] priors to seek a Habitual Offender status and will sentence as a Habitual Offender.
>
> . . .
>
> He has not appealed any of these matters successfully. It is noted that the officer who interviewed Mr. Rankin at the Conte, C-O-N-T-E facility noted that he had no remorse.
>
> He did not show any remorse for his actions. And as it is stated today, he takes no responsibility. And he said that he did not do anything.
>
> Specifically, he said, quote, unquote, I did not hurt anyone. And he told the person I did not break into the house. And I did not hurt anyone.

### *The trial court's consideration of appellant's lack of remorse did not amount to fundamental error as it occurred during the court's consideration of whether to impose a downward departure sentence*

The primary issue on appeal concerns whether the trial court's statement that Rankin "did not show any remorse" and took no responsibility for his actions constitutes fundamental error, warranting resentencing.

*Preservation*

Preliminarily, the State is incorrect that Rankin was required to either object at the sentencing hearing or file a 3.800(b) motion to raise this issue on appeal. A Rule 3.800(b)(2) motion to correct sentence subsequent to sentencing is "not the proper mechanism for preserving for appeal the issue of whether the court improperly considered certain factors in imposing sentence." *Hannum v. State*, 13 So. 3d 132, 135 (Fla. 2d DCA 2009) (footnote omitted). Rather, courts recognize the issue as one of fundamental error. *Id.* "Generally, the trial court's imposition of a sentence that is within the minimum and maximum limits set by the legislature 'is a matter for the trial [c]ourt in the exercise of its discretion, which cannot be inquired into upon the appellate level.'" *Nusspickel v. State*, 966 So. 2d 441, 444 (Fla. 2d DCA 2007) (quoting *Shellman v. State*, 222 So. 2d 789, 790 (Fla. 2d DCA 1969)). "However, an exception exists when the trial court considers constitutionally impermissible factors in imposing a sentence." *Norvil* v. *State*, 16 So. 3d 3, 6 (Fla. 4th DCA 2014) (citing *Peters v. State*, 128 So. 3d 832, 844 (Fla. 4th DCA 2013)). Thus, we view the case through this fundamental error prism.

- 3 -

*Analysis*

While a trial court has "wide discretion regarding the factors it may consider when imposing a sentence," *Bracero v. State*, 10 So. 3d 664, 665 (Fla. 2d DCA 2009), reliance upon "'impermissible factors violates [a] defendant's due process rights.'" *Brown v. State*, 27 So. 3d 181, 183 (Fla. 2d DCA 2010) (quoting *Ritter v. State*, 885 So. 2d 413, 414 (Fla. 1st DCA 2004)). One such "impermissible factor" arises where the sentencing court "consider[s] the fact that a defendant continues to maintain his innocence and is unwilling to admit guilt." *Ritter*, 885 So. 2d at 414; *Soto v. State*, 874 So. 2d 1215, 1217 (Fla. 3d DCA 2004) ("[C]ontinued protestations of innocence, and unwillingness to admit guilt should not be factors taken into consideration by a court in sentencing a defendant."). As the Florida Supreme Court has explained:

> A defendant has the right to maintain his or her innocence and have a trial by jury. Art. I, § 22, Fla. Const. The protection provided by the fifth amendment to the United States Constitution guarantees an accused the right against self-incrimination. The fact that a defendant has pled not guilty cannot be used against him or her during any stage of the proceedings because due process guarantees an individual the right to maintain innocence even when faced with evidence of overwhelming guilt. A trial court violates due process by using a protestation of innocence against a defendant. This applies to the penalty phase as well as to the guilt phase under article I, section 9 of the Florida Constitution.

*Holton v. State*, 573 So. 2d 284, 292 (Fla. 1990).

Over time, case law has expanded the rule in *Holton* and applied it in cases which "indicate that it is 'generally improper for the sentencing court to consider the defendant's lack of remorse.'" *Peters v. State*, 128 So. 3d 832, 847 (Fla. 4th DCA 2013) (quoting *Robinson v. State*, 108 So. 3d 1150, 1151 (Fla. 5th DCA 2013)). The idea is that while "remorse and an admission of guilt may be grounds for mitigation of sentence, the opposite is not true." *Brown*, 27 So. 3d at 183 (quoting *Ritter*, 885 So. 2d at 414); *Gilchrist v. State*, 938 So. 2d 654, 657-58 (Fla. 4th DCA 2006) ("When a court predicates the length of a sentence on the defendant's failure to show any inclination toward repentance, the court violates the defendant's right not to be required to incriminate himself.").

Consideration of remorse is, however, appropriate if it occurs during a court's consideration of whether or not to mitigate a sentence. *See Shelton*

*v. State*, 59 So. 3d 248, 250 (Fla. 4th DCA 2011). This is especially true "where a defendant . . . takes the position at his [ ]sentencing . . . that he has been rehabilitated" since "[r]emorse is a part of rehabilitation." *Peters*, 128 So. 3d at 848. Thus, where a defendant "inject[s] the issue of his rehabilitation into [his] case," we have held "the trial court permissibly could have considered all factors relevant to his rehabilitation and fitness to rejoin society," including his remorse or lack of it. *Id.*

This is the distinguishing factor between this case and our recent decision in *Davis v. State*, 149 So. 3d 1158 (Fla. 4th DCA 2014), upon which Rankin relies in his reply brief. In *Davis*, this Court reversed a defendant's concurrent sentences for attempted first degree murder with a firearm when the trial judge made the following remarks:

> I heard the evidence and I heard the jury speak. I also heard the recommendation of your lawyer. I've heard the recommendation by the state. I am going to give you as much of a break as I can. *What I didn't hear was your responsibility. What I didn't hear was an apology to the family of the victims and to the victims. What I didn't hear was you taking ownership of your actions and that bothers me.*

*Id.* at 1159 (emphasis in original). Under the circumstances, we found the "trial court's consideration of [the defendant's] lack of remorse and failure to take ownership of his actions or apologize to the victims' families constituted fundamental error." *Id.* at 1160. Unlike this case, there was no indication the *Davis* defendant moved for a downward departure or otherwise injected rehabilitation into his argument for mitigation.

Here, the defendant expressly moved for a downward departure. "Florida law provides that a trial court must, at a minimum, impose the lowest permissible sentence on a criminal defendant calculated according to the Criminal Punishment Code, unless the court finds that the evidence supports a valid reason for a downward departure." *State v. Owens*, 95 So. 3d 1018, 1019 (Fla. 5th DCA 2012) (citing § 921.00265(1), Fla. Stat. (2010)). "To determine whether a downward departure sentence is appropriate, the trial court follows a two-step process." *State v. Subido*, 925 So. 2d 1052, 1057 (Fla. 5th DCA 2006) (citing *State v. Mann*, 866 So. 2d 179, 181 (Fla. 5th DCA 2004); *Staffney v. State*, 826 So. 2d 509, 511 (Fla. 4th DCA 2002)). "In the first step, the trial court must determine whether there is a valid legal basis for the departure sentence that is supported by facts proven by a preponderance of the evidence." *State v. Knox*, 990 So. 2d 665, 667-68 (Fla. 5th DCA 2008) (citing *Banks v. State*, 732 So. 2d 1065, 1067 (Fla. 1999)). Once the defendant satisfies this burden, the court must then decide "whether it *should* depart, i.e., whether

departure is indeed the best sentencing option for the defendant." *Banks,* 732 So. 2d at 1068.

Reference to the applicable statutes reveals that the only statutory ground Rankin could have pursued based on his counsel's argument was that "[t]he offense was committed in an unsophisticated manner and was an isolated incident for which the defendant **has shown remorse**." § 921.0026(2)(j), Fla. Stat. (2013) (emphasis added). The trial court's finding that Rankin lacked remorse went directly to the heart of this statutory basis for a downward departure. The trial court's statements, therefore, do not constitute fundamental error.

### *Because appellant was sentenced as an habitual felony offender, the incorrect scoresheet does not require a reversal for resentencing*

Rankin's second issue on appeal is that the trial court erred in denying his Rule 3.800 motion to correct sentencing error because his scoresheet incorrectly included seven more points than it should have. The State concedes the discrepancy but contends any deficiencies in the scoresheet were harmless since Rankin was sentenced as a habitual felony offender. This determination took his sentence outside of the Criminal Punishment Code and made his scoresheet legally irrelevant.

*Analysis*

It is true that "'[a]ll defendants are entitled to be sentenced under a correctly scored and calculated score sheet.'" *Cooper v. State,* 902 So. 2d 945, 946 (Fla. 4th DCA 2005) (quoting *Fortner v. State,* 830 So. 2d 174, 175 (Fla. 2d DCA 2002)); *see also State v. Anderson,* 905 So. 2d 111, 118 (Fla. 2005) (noting that "it is essential for the trial court to have the benefit of a properly calculated scoresheet when deciding upon a sentence"). As we have written:

> [A] score sheet error is not deemed harmless unless the record conclusively shows that the trial court would have imposed the same sentence had it had the benefit of the corrected score sheet.

*Cooper,* 902 So. 2d at 946 (quoting *Fortner,* 830 So. 2d at 175). However, such is the case only where the scoresheet would actually apply.

"Habitual offender sentencing is . . . separate from both the sentencing guidelines and sentencing under the Criminal Punishment Code." *State v. Collins,* 985 So. 2d 985, 991 (Fla. 2008); *Alexander v. State,* 88 So. 3d 417, 419 (Fla. 4th DCA 2012) ("Because the trial court sentenced appellant as an habitual offender, the Criminal Punishment Code is inapplicable.").

Such separation is largely a relic from the time guidelines severely restricted a trial court's sentencing discretion. *Cf. State v. Kendrick*, 596 So. 2d 1153, 1154 (Fla. 5th DCA 1992) ("[T]he legislature amended the habitual offender statute to make habitual offender sentencing independent of the sentencing guidelines."). Nonetheless, the limitation remains even today. *See* § 775.084(4)(h), Fla. Stat. (2013) ("A sentence imposed under this section is not subject to s. 921.002 [The Criminal Punishment Code].").

Thus, where a defendant is sentenced as an habitual felony offender, "the guidelines scoresheet is legally irrelevant." *Cooper*, 902 So. 2d at 947;[2] *see also LaFleur v. State*, 812 So. 2d 545, 546 (Fla. 4th DCA 2002) (finding that because the defendant was sentenced as an habitual offender, he was not entitled to be resentenced even though his scoresheet was improperly calculated and the trial court sentenced him at the miscalculated maximum guideline sentence); *Horn v. State*, 775 So. 2d 1007, 1007 (Fla. 3d DCA 2001) (finding that "[w]e need not address th[at] claim [an incorrect calculation in his sentencing guidelines scoresheet] because defendant was sentenced as a habitual offender and the guidelines scoresheet is irrelevant"); *McGee v. State*, 19 So. 3d 1074, 1079 (Fla. 4th DCA 2009) ("[A]ny error in a guidelines scoresheet is harmless when the defendant is sentenced as a habitual offender.").

Here, the trial court sentenced Rankin as an habitual offender, rendering his scoresheet legally irrelevant. Furthermore, by entering a sentence well above the 12.3 month minimum prison sentence under the miscalculated scoresheet, it can be inferred that a downward recalculation would not affect the trial judge's sentence.

*Affirmed.*

DAMOORGIAN and GERBER, JJ., concur.

\*          \*          \*

**Not final until disposition of timely filed motion for rehearing.**

---

[2]In *Cooper*, for example, the defendant was sentenced as an habitual felony offender to 41.712 months incarceration, representing the minimum guidelines sentence under an incorrectly calculated scoresheet. 902 So. 2d at 947. Though "the 41.712-month sentence happened to be equal to the minimum guidelines sentence under the incorrectly calculated score sheet," we nonetheless affirmed since "the guidelines scoresheet is legally irrelevant because [the defendant] was habitualized." *Id.*