NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

STEPHEN MARTY,                      )
                                    )
      Appellant,                    )
                                    )
v.                                  )          Case No.  2D15-1218
                                    )
STATE OF FLORIDA                    )
                                    )
      Appellee.                     )
_____)

Opinion filed September 16, 2016.

Appeal from the Circuit Court for Polk
County; Dennis P. Maloney, Judge.

Jean Marie Henne, of Jean M. Henne, P.A.,
Winter Haven, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Dawn A. Tiffin, Assistant
Attorney General, Tampa, for Appellee.


BADALAMENTI, Judge.

      This is a direct appeal from a final criminal judgment and sentence.

Stephen Marty was convicted of aggravated assault with a deadly weapon and

sentenced to a mandatory minimum sentence of three years' imprisonment.  On appeal,

Marty argues that the trial court erred by: (1) failing to instruct the jury as to the legal

use of nondeadly force; (2) failing to grant his motion for judgment of acquittal; and (3) failing to give an instruction on the presumption of reasonable fear of death or great bodily harm, pursuant to section 776.013(1), Florida Statutes (2014). We accept Marty's invitation to construe his first argument as an ineffective assistance of counsel claim and reverse. The face of the record demonstrates that Marty's trial counsel was ineffective for neglecting to request a jury instruction on the justifiable use of nondeadly force, the only self-defense instruction supportable by the undisputed facts presented at trial. Instead, Marty's counsel requested a self-defense instruction on the justifiable use of deadly force, which is applicable in a narrower set of circumstances as compared to nondeadly force. We can see no strategic reason to make the burden of proving self-defense more difficult, especially because self-defense was essential to Marty's theory of defense at trial. Because Marty's trial counsel's failure to request the proper self-defense jury instruction infringed on Marty's right to a fair trial, we vacate Marty's conviction and remand for a new trial. We need not address Marty's remaining arguments.

Marty and his wife were sitting in a hot tub in their backyard. Marty noticed an eleven-year-old neighbor boy sitting on a roof overlooking Marty's backyard and watching Marty and his wife. Marty told the boy to get off the roof and the boy complied. The boy then told his twenty-year-old sister, Paula Valenzuela, that something happened between him and Marty. Valenzuela went to Marty's house, accompanied by her mother, her brother who had observed Marty and his wife in the hot tub, and another younger brother. Valenzuela knocked on the screen door to Marty's front porch. After getting no answer, Valenzuela pounded on Marty's kitchen

- 2 -

window, yelling profanity at Marty and suggesting he did not have the gumption to confront her. Still getting no answer, Valenzuela and her family left Marty's property.

Marty did not hear Valenzuela because he was still in the hot tub. But Marty's wife, who had gone inside to get dressed, told Marty that someone outside had been yelling and pounding on the window. Marty went to retrieve his cellphone and handgun from his car, which was parked in the driveway. From his driveway, Marty began calling the Polk County Sherriff's Office (PCSO). While Marty was outside, Valenzuela was driving away from her mother's house and saw Marty as she drove by. Accounts differ as to what happened next.

Valenzuela testified that she stopped her car on the side of the road in front of Marty's house, rolled down her window, and resumed insulting Marty. Valenzuela testified that Marty then pointed his gun at her and said he would kill her if she got out of the car. Valenzuela claims she told Marty that she was going to call the police, but Marty replied that he was already calling the police. At that point, Valenzuela drove around the corner and contacted the police.

Marty testified that Valenzuela parked her car on his lawn, got out of the car, and quickly approached him with both fists raised. Marty further testified that Valenzuela again profanely exclaimed that Marty did not have the gumption to face her and threatened to have her husband do physical harm to Marty's person. Marty stated that when Valenzuela got within stabbing distance, he told her that he had a gun and showed her the butt of his gun with the barrel pointed away. Marty then told Valenzuela to leave the area, at which point she left. Marty testified that his gun was loaded, but there was no round in the chamber. Marty explained that although he was not afraid of

Valenzuela killing him, he was concerned that she might try to harm him or his wife or damage his property.

A PCSO Deputy responded to calls from both Marty and Valenzuela, which were made within one minute of each other. The deputy testified that Marty admitted to pointing his gun in the air and at the ground but not at Valenzuela. The deputy explained that Marty told him he showed Valenzuela the gun to let her know "he meant business." The deputy testified that Marty was extremely cooperative and turned his handgun over as soon as he was asked to do so. The deputy noted that Valenzuela was crying and hysterical when he arrived, and he had to tell Valenzuela to back away while he was interviewing Marty.

Marty was charged with aggravated assault with a deadly weapon, which carries a three-year mandatory minimum sentence. During the jury trial, Marty's counsel requested Florida's standard jury instruction on the justifiable use of deadly force in self-defense. See Fla. Std. Jury Instr. (Crim.) 3.6(f). But Marty's counsel neglected to request a jury instruction on the justifiable use of nondeadly force. See Fla. Std. Jury Instr. (Crim.) 3.6(g). As modified for Marty's trial, instruction 3.6(f) read as follows:

> The use of deadly force is justifiable only if the Defendant, STEPHEN MARTY, reasonably believed that the force is necessary to prevent imminent death or great bodily harm to himself while resisting:
> 1.     another's attempt to murder him or
> 2.     any attempt to commit an aggravated assault or burglary upon him, or
> 3.     any attempt to commit burglary upon or in any dwelling, residence, or vehicle occupied by him.

A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent

1. imminent death or great bodily harm to himself or another, or

2. the imminent commission of an aggravated assault or burglary committed against himself or another.

Conversely, instruction 3.6(g) which addresses the justifiable use of nondeadly force, reads as follows:

(Defendant) was justified in [using] [or] [threatening to use] non-deadly force against (victim) and had no duty to retreat if [he] [she] reasonably believed that such conduct was necessary to defend [himself] [herself] [another] against (victim's) imminent use of unlawful force.

. . . .

(Defendant) was justified in [using] [or] [threatening to use] non-deadly force against (victim) and had no duty to retreat if**:**

1. (Victim) [was about to trespass] [or] [was trespassing] or [was about to wrongfully interfere] [or] [was wrongfully interfering] with land or personal property; and

2. The land or personal property was lawfully in (defendant's) possession, or in the possession of a member of [his] [her] immediate family or household, or in the possession of some person whose property [he] [she] was under a legal duty to protect; and

3. (Defendant) reasonably believed that [his] [her] [use] [or] [threatened use] of force was necessary to prevent or terminate (victim's) wrongful behavior.

To summarize, "[a] person is justified in using . . . deadly force if he or she reasonably believes that using . . . such force is necessary to prevent imminent death or great bodily harm to himself . . . or another or to prevent the imminent commission of a

- 5 -

forcible felony." § 776.012(2). However, nondeadly force may be used when the defendant "reasonably believes that such conduct is necessary to defend himself . . . or another against . . . imminent use of unlawful force." § 776.012(1). Nondeadly force may also be used where the defendant "reasonably believes that such conduct is necessary to prevent or terminate . . . trespass on, or other tortious criminal interference with, either real property . . . or personal property." § 776.031(1) (emphasis added).

The jury found Marty guilty of aggravated assault with a deadly weapon. During Marty's sentencing hearing, Marty's counsel referenced a presentencing report which contained a statement from Valenzuela explaining that she did not want Marty to be imprisoned. The transcript from the sentencing hearing also indicates that the trial court expressed dismay at sentencing Marty to any term of incarceration. The trial court stated, "Let me just say from the outset without hearing a word from the State. I don't think Mr. Marty should be incarcerated as a result of this incident. Tell me how I can get around the minimum mandatory?" Failing to find a way around the mandatory minimum sentence, the trial court sentenced Marty to three years in prison. Marty now timely appeals.

Marty presents his argument primarily as one of fundamental error. However, in the alternative, Marty suggests that this court may also reverse based on ineffective assistance of counsel. We believe that ineffective assistance is the proper ground for addressing the core of Marty's issues on appeal.

Claims of ineffective assistance of counsel are "not normally cognizable on direct appeal." Forget v. State, 782 So. 2d 410, 413 (Fla. 2d DCA 2001). They may be reviewable, however, on direct appeal where "the ineffectiveness is apparent from

- 6 -

the face of the record and it would be a waste of judicial resources to require the trial court to address the issue." Blanco v. Wainwright, 507 So. 2d 1377, 1384 (Fla. 1987) (first citing Stewart v. State, 420 So. 2d 862, 864 (Fla.1982); then citing Foster v. State, 387 So. 2d 344, 345 (Fla.1980)).  To establish ineffective assistance of counsel a defendant "must show that counsel's performance was deficient" and "that counsel's errors were so serious as to deprive the defendant of a fair trial." Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate that trial counsel was deficient, a defendant must show that counsel's performance "fell below an objective standard of reasonableness" as measured by "prevailing professional norms." Id. at 688.  To demonstrate that trial counsel's deficiency prevented a fair trial, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Turning to the facts of this case, Marty pointing a gun at Valenzuela without firing at her did not, as a matter of established law, constitute deadly force.  See Rivero v. State, 871 So. 2d 953, 954 (Fla. 3d DCA 2004); cf. Miller v. State, 613 So. 2d 530, 531 (Fla. 3d DCA 1993) (explaining that discharging a firearm in the air as a warning shot constitutes the use of deadly force).  Although firearms are frequently considered deadly weapons, "the display of a deadly weapon, without more, is not 'deadly force.' " Howard v. State, 698 So. 2d 923, 925 (Fla. 4th DCA 1997) (citing Toledo v. State, 452 So. 2d 661, 662 n.3 (Fla. 3d DCA 1984)).  Marty and Valenzuela's accounts differ in several important respects, but they overlap on one crucial detail: Marty never fired his gun.  Because there is no dispute that Marty never fired his gun, there can be no dispute that Marty used nondeadly force rather than deadly force.

Thus, the only self-defense instruction that fits the undisputed facts of this case is an instruction for the justified use of nondeadly force. Marty's counsel failed to request such an instruction. Instead, Marty's counsel requested an instruction for the justified use of deadly force. Such an instruction is not only inapplicable to the facts of this case, but actually made it more difficult for Marty to establish that he was defending himself. That is, the use of deadly force is permitted in a narrower set of circumstances as compared to the use of nondeadly force. Compare §§ 776.012(2), .031(2), 782.02, with §§ 776.012(1), .031(1). We can glean no strategic reason for Marty's counsel to request a jury instruction that made it more difficult for Marty to prove that he acted in self-defense during his encounter with Valenzuela. Thus, it is obvious from the face of the record that Marty's counsel was deficient for failing to request what would have been the only proper self-defense instruction under the facts presented at trial, instruction 3.6(g).

Having determined that Marty's counsel was deficient for requesting the wrong instruction, we now turn to Strickland's second prong. We cannot say that defense counsel's failure to request the nondeadly force instruction did not affect the jury's verdict. It is reasonably probable that the jury believed Marty was entitled to use some force in self-defense, but not to the extent of deadly force, which was the only self-defense instruction presented for the jury's consideration. In other words, Marty may have been justified in displaying his firearm (nondeadly force) to prevent an "imminent use of unlawful force" or "tortious . . . interference with" his property, see §§ 776.012(1), .031(1), but not entitled to discharge his firearm (deadly force) because he did not reasonably believe that he was in danger of "imminent death or great bodily

harm," or that Valenzuela would commit a forcible felony against him or his property, see §§ 776.012(2), .031(2), 782.02.

This scenario seems even more plausible upon review of Marty's trial testimony. Marty testified that he was not in fear of Valenzuela killing him, but he was still concerned that Valenzuela might try to use unlawful force against him or damage his car. Moreover, the State emphasized in closing argument that "the law of self-defense is not applicable to this case because [Marty] was not in reasonable fear of death or great bodily harm to himself." (Emphasis added.) Had Marty's counsel requested a self-defense instruction supported by the facts and circumstances presented at trial, the State would not have been able to make such a closing argument. Hence, it is clear on the face of the record on appeal that Marty was prejudiced by his trial counsel's failure to request the proper self-defense instruction.

In so concluding, we are guided by the Fourth District's holding in Michel v. State, 989 So. 2d 679, 680 (Fla. 4th DCA 2008), and our holding in McComb v. State, 174 So. 3d 1111, 1112 (Fla. 2d DCA 2015). The defendant in Michel was charged with aggravated battery. 989 So. 2d at 680. "The initial jury instructions prepared by the [S]tate included instructions on both the justifiable use of non-deadly force and the justifiable use of deadly force, but the [S]tate questioned whether giving both would be appropriate." Id. After some discussion, the State indicated that it would be comfortable with instructions on both the justifiable use of deadly and nondeadly force. Id. But for whatever reason, the issue was not raised again. Id. Ultimately, the instructions given to the jury did not include an instruction on the justifiable use of nondeadly force. Id. The jury found the defendant in Michel guilty of the lesser included

offense of simple battery. Id. Defense counsel then filed a motion for new trial, arguing that neither he nor the State recognized that justifiable use of nondeadly force was a defense to the simple battery charge. Id. at 680-81. On direct appeal, the Fourth District found ineffective assistance of counsel on the face of the record, emphasizing that justifiable use of nondeadly force was the defendant's only defense to the simple battery charge. Id. at 681-82. The Fourth District noted that "even if the jury believed that Michel acted in self-defense, which there was evidence to support, they did not have the legal basis to find her not guilty of the simple battery." Id. at 682. The court also remarked that "it is patently unreasonable to fail to request an instruction that provides a legal defense to undisputed facts." Id. (emphasis added) (citing Aversano v. State, 966 So. 2d 493, 495 (Fla. 4th DCA 2007)). Here, it is likewise undisputed that Marty never fired his gun, even though Marty's counsel requested a self-defense instruction which implied that Marty did so.

In McComb, the defendant was charged with aggravated battery. 174 So. 3d at 1112. At the beginning of trial, defense counsel asked for a jury instruction on the justifiable use of deadly force. Id. Then, after closing arguments, the parties discussed giving an additional instruction on the use of nondeadly force. Id. For whatever reason, the trial court failed to give the nondeadly force instruction to the jury. Id. at 1112-13. Defense counsel did not object to the instructions as read to the jury. Id. at 1113. On direct appeal, the McComb defendant argued that his trial counsel was ineffective for failing to object to the omission of the nondeadly force instruction. This court agreed and reversed. Id. We noted that, "[a]s instructed, the jury could have believed that [victim] was the aggressor but rejected [defendant's] self-defense claim because

- 10 -

[defendant] did not present a threat of 'imminent death or great bodily harm' that would justify resorting to deadly force." Id.

The present case is very similar, and arguably worse than the situations in either Michel or McComb.  Defense counsel in this case did not inquire as to the possibility of giving both a deadly and nondeadly force instruction and simply failed to object to the instructions as they were read.  Instead, defense counsel plainly requested a self-defense instruction that was inapposite to the undisputed facts and paradoxically made it more difficult for Marty to prove his own affirmative defense.  If the errors in McComb and Michel were ineffective assistance on the face of the record, then surely this error must be ineffective assistance on the face of the record as well.

Marty's trial counsel was constitutionally ineffective because he neglected to request a self-defense instruction that was applicable to the facts and circumstances of the case.  This error prejudiced Marty because the justifiable use of nondeadly force was essential to Marty's theory of defense at trial.  This ineffectiveness is obvious from the face of the record.  We cannot say that there was no reasonable probability of Marty being prejudiced by his trial counsel's error.  Accordingly, we vacate Marty's conviction and remand for a new trial.

Judgment reversed; conviction vacated; remanded for a new trial.


CASANUEVA, J., and CASE, JAMES R., ASSOCIATE SENIOR JUDGE, Concur.