NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JOHN GRAHAM DICKIE,                    )
                                       )
            Appellant,                 )
                                       )
v.                                     )          Case No.  2D15-2709
                                       )
STATE OF FLORIDA,                      )
                                       )
            Appellee.                  )
                                       )

Opinion filed March 8, 2017.

Appeal from the Circuit Court for Sarasota
County; Thomas Krug, Judge.

Howard L. Dimmig, II, Public Defender, and
Robert D. Rosen, Assistant Public Defender,
Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Peter Koclanes, Assistant
Attorney General, Tampa, for Appellee.

BADALAMENTI, Judge.

            In this Anders[1] appeal, John Graham Dickie appeals his judgment and

sentences for thirty counts of possession of ten images of child pornography, at least

one of which involved a movie of a child.  §§ 775.0847(2), 827.071(5)(a), Fla. Stat.

---

            [1]Anders v. California, 386 U.S. 738 (1967).

(2015).  After Mr. Dickie's <u>Anders</u> counsel filed a brief explaining that she could find no issues of arguable merit, we struck the <u>Anders</u> brief and ordered merits briefing.  We affirm his judgment and sentences without comment and write only to address whether the trial court's consideration of unsworn victim impact statements during Mr. Dickie's sentencing was improper pursuant to section 921.143(1)(a)-(b), Florida Statutes (2015), and <u>Patterson v. State</u>, 994 So. 2d 428, 429 (Fla. 1st DCA 2008).  Having considered the merits briefs submitted by both Mr. Dickie and the State, we hold that the trial court did not abuse its discretion by considering the unsworn victim impact statements when fashioning Mr. Dickie's sentences.

Mr. Dickie was arrested by the Sarasota County Sheriff's Office (SCSO) after SCSO found "literally thousands" of images of child pornography on Mr. Dickie's laptop and encrypted flash drive, pursuant to a valid search warrant.  Mr. Dickie was cooperative and confessed that he was in possession of child pornography.  Based on the images seized from his apartment, the State charged Mr. Dickie with thirty separate counts of possessing ten images of child pornography, at least one of which involved a movie of a child.  Mr. Dickie subsequently entered an open plea of no contest on all thirty counts.

A two-day sentencing hearing was conducted by the trial court.  On the first day of the sentencing hearing, Mr. Dickie asserted three possible downward departure grounds for the trial court to consider in fashioning his total sentence.

Germane to the discrete issue this court ordered to be briefed in this <u>Anders</u> appeal, the State sought to introduce several victim impact statements into evidence for the trial court's consideration.  The statements were collected through the

FBI's Child Victim Identification Program. As the State explained, the FBI reuses the same victim impact statements across proceedings because child pornography traffickers often organize their pornography by "series"—a set of images taken of the same victim or victims over time. A popular series may remain in circulation on the internet long after its creation.

The victim impact statements in this case were drafted by the child victims (and in some cases, parents of the child victims) depicted in five different series. Images from each of these series were found in Mr. Dickie's apartment. Mr. Dickie objected to the introduction of the victim impact statements on multiple grounds, one of which was that the statements were not taken under oath.[2] The trial court reserved ruling on the victim impact statements' admissibility.

On the second day of the sentencing hearing, the trial court ruled that the victim impact statements were admissible for sentencing purposes. Prior to the parties'

---

[2]We note that Mr. Dickie did not assert an objection based on a violation of the Confrontation Clause. Amend. VI, U.S. Const.; Art. I, § 16(a), Fla. Const. There is some authority in Florida suggesting that the presence or absence of an oath is one component of a defendant's constitutional right to confrontation. See State v. Ford, 626 So. 2d 1338, 1346 (Fla. 1993) (citing Maryland v. Craig, 497 U.S. 836, 847 (1990)). But Mr. Dickie did not raise this issue, and even if he had, the absence of an oath is not dispositive for Confrontation Clause purposes. See Bullcoming v. New Mexico, 564 U.S. 647, 664 (2011). We also note that section 90.605(1), Florida Statutes (2015), imposes an oath requirement on testifying witnesses at trial. But we can find no case applying section 90.605(1) to sentencing proceedings. We will not extend provisions of the Florida Evidence Code to apply outside of the trial context except where we are specifically directed to do so. See § 90.103(1) ("Unless otherwise provided by statute, [the Florida Evidence Code] applies to the same proceedings that the general law of evidence applied to before the effective date of this code."); see also Williams v. New York, 337 U.S. 241, 246 (1949) ("[B]efore and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.").

- 3 -

closing arguments, the trial court indicated that it would recess specifically to review the victim impact statements because it had not yet done so.

Upon reconvening the sentencing hearing, the parties presented their closing arguments and the trial court indicated that it "had reviewed everything given to it." The trial court then denied Mr. Dickie's request for downward departure and sentenced him to a total of 397.5 months' imprisonment. Pursuant to our order for merits briefing, Mr. Dickie argues that section 921.143(1) acts as a bar to the admission of unsworn victim impact statements at sentencing, and therefore the trial court erred in considering such statements. We disagree.

It is well settled that "[a] sentencing court has wide discretion regarding the factors it may consider when imposing a sentence." Bracero v. State, 10 So. 3d 664, 665 (Fla. 2d DCA 2009). "The sentencing court . . . must be permitted to consider any and all information that reasonably might bear on the proper sentence for a particular defendant, given the crime committed." Howard v. State, 820 So. 2d 337, 340 (Fla. 4th DCA 2002) (quoting Wasman v. United States, 468 U.S. 559, 563 (1984)).

The plain language of section 921.143(1) does nothing to restrict the type of information that a court may consider when fashioning a criminal defendant's sentence. In pertinent part, section 921.143(1)(a)-(b) provides that a sentencing court "shall permit the victim of [a] crime" to "[a]ppear before the sentencing court for the purpose of making a statement under oath for the record" and "[s]ubmit a written statement under oath to the office of the state attorney."[3] (Emphasis added.) The

---

[3]The statute also affords the same right to the victim's parents, guardians, or lawful representatives if the victim is a minor, or to the victim's next of kin if the victim has died from causes related to the crime. § 921.143(1).

statute's plain language says nothing about what a sentencing court shall not permit, and courts have declined to read such restrictive verbiage into the statute. Cf. Smith v. State, 982 So. 2d 69, 71-72 (Fla. 1st DCA 2008) (holding that section 921.143(1) did not bar the sentencing court from hearing testimony from the victim's mother and sister, even though the text of the statute states that a court "shall permit" such testimony only if the victim is a minor or dead).

We conclude that section 921.143(1) was meant to create a narrow class of victim impact statements which the trial court shall permit to be heard prior to imposing a sentence. That is, the legislature mandated that the trial courts permit all victims of crimes the opportunity to be heard prior to the imposition of a criminal sentence, so long as the victims' statements were made under oath. In so doing, the legislature did not sub silentio create a new sentencing doctrine precluding trial courts from considering unsworn victim impact statements in fashioning a criminal sentence.[4] The trial court must be permitted to consider, and afford the appropriate weight to, any

---

[4]There was no presentence investigation (PSI) report prepared in this case. We note, however, that PSI reports are statutorily required to include "[a] statement regarding the extent of the victim's loss or injury." § 921.231(1)(n). In many instances, victim loss or injury statements in PSI reports come directly from victims. See, e.g., Marty v. State, 41 Fla. L. Weekly D2152, D2153 (Fla. 2d DCA Sept. 23, 2016). There is no requirement in section 921.231(1)(n) that a victim loss or injury statement in a PSI report be sworn. Yet PSI reports containing unsworn victim loss or injury statements are prepared for a trial court's consideration in fashioning a criminal defendant's sentence. There is no meaningful distinction between the trial court's consideration of unsworn victim loss or injury statements in a PSI report and its consideration of unsworn victim impact statements generally. Both provide the trial court with relevant information to consider while fashioning a sentence.

constitutionally and statutorily permissible information that reasonably might bear on the proper sentence for a particular defendant. Howard, 820 So. 2d at 340.[5]

The sole judicial opinion construing section 921.143(1) as a barrier to the admissibility of unsworn victim impact statements is Patterson. 994 So. 2d at 429. The defendant in Patterson appealed from a summary denial of a motion for postconviction relief. Id. The First District affirmed the trial court's summary denial of all the defendant's postconviction issues, save for one; the defendant claimed his trial counsel was ineffective for failing to object to a letter from the victim's brother which was not authenticated, handwritten, or signed. Id. In remanding for an evidentiary hearing on this ground, the First District read section 921.143(1) as a statute which "requires that the victim or family member either appear before the sentencing court under oath or submit a written statement under oath to the state attorney, neither of which occurred." Patterson, 994 So. 2d at 429 (emphasis added). Accordingly, the First District reversed the summary denial of this single issue.

The Patterson court's construction of section 921.143(1) is unsupportable by the statute's text. The plain language of section 921.143(1) does not impose any "requirement" on victims or their families. In fact, the word "require" does not appear in the statute at all. The only constraint section 921.143(1) creates is on trial courts, to the extent that the trial courts "shall permit" victims the opportunity to be heard so long as

---

[5]We also note that the current form of section 921.143(1) was passed by the legislature as part of the Victim and Witness Protection Act (VWPA). See ch. 84-363, § 3, Laws of Fla. For those who rely on legislative intent statements, the stated intent of the VWPA was to "enhance and protect the necessary role of victims" and "to assist victims and witnesses of crime without infringing on the constitutional rights of defendants." Id. § 2.

those victims make their statements under oath.  The Patterson court's interpretation of section 921.143(1) as "requiring" that only sworn statements of victims be considered by the trial courts markedly changes the meaning of the statute, encroaches on the legislature's role to write the laws of our state, and therefore contravenes bedrock principles of separation of powers.

In fairness, we recognize that the Patterson opinion was meant only to be a concise reversal of a summary denial of postconviction relief.  But the Patterson court's construction of section 921.143(1) seems to have influenced legal scholars, who now regard Florida as a state which requires all victim impact statements to be sworn.[6] We disagree with Patterson and the proposition that unsworn victim impact statements are per se inadmissible at sentencing hearings.  Trial courts have the discretion to consider such statements, just as they did before passage of section 921.143(1).  See Bracero, 10 So. 3d at 665; Howard, 820 So. 2d at 340.

We affirm Mr. Dickie's convictions and sentences in all respects.  The trial court did not err by considering unsworn victim impact statements in fashioning Mr. Dickie's sentences.  Section 921.143(1) does not preclude a trial court from considering unsworn victim impact statements while fashioning a criminal defendant's sentence.

We certify conflict with the First District's decision in Patterson.

---

[6]See William H. Burgess, III, Florida Sentencing §§ 1:32, 1:36 (2015-16 ed. 2015) (citing Patterson for the proposition that section 921.143 "requires that [a] victim or family member either appear before the sentencing court under oath or submit a written statement under oath to the state attorney" and that "it is reversible error" to admit unsworn statements); see also 6 Wayne R. LaFave et al., Criminal Procedure § 26.5(d) (4th ed.), Westlaw (database updated Dec. 2015) (listing Florida among the states which "require that victim statements be made under oath to meet minimal standards of reliability" and citing to section 921.143(1) as supportive authority).

Affirmed; conflict certified.


VILLANTI, C.J., and SALARIO, J., Concur.