# Third District Court of Appeal
## State of Florida

Opinion filed March 26, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1395
Lower Tribunal No. F08-18639

_____

**Jules Ducas,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Miguel M. de la O, Judge.

Carlos J. Martinez, Public Defender, and Maria Lauredo, Chief Assistant Public Defender, and Jennifer Thornton, Assistant Public Defender, for appellant.

James Uthmeier, Attorney General, and Sandra Lipman, Senior Assistant Attorney General, for appellee.

Before LOGUE, C.J., and LOBREE and BOKOR, JJ.

LOGUE, C.J.

This case appears to present an issue of first impression in Florida regarding whether a trial court may consider a conviction for offenses committed after the primary offense when resentencing a defendant on that primary offense. Because the trial court did not err in considering the defendant's subsequent conviction on resentencing, we affirm.

## BACKGROUND

On March 17, 2010, a jury found Jules Ducas guilty of three counts of armed robbery and one count of burglary, arising from an incident that occurred on March 2, 2008. On May 21, 2010, he was sentenced to consecutive life sentences for the robberies and a concurrent life sentence for the burglary.

This Court affirmed the robbery convictions on direct appeal but reversed the burglary conviction, finding that the trial court should have granted a judgment of acquittal as to that count. Ducas v. State, 84 So. 3d 1212 (Fla. 3d DCA 2012). On remand, the trial court vacated the judgment and sentence for burglary but did not resentence Ducas.

In 2020, Ducas filed a motion for resentencing with a corrected scoresheet omitting the burglary offense. The trial court granted the motion and conducted a resentencing in July of 2022.

2

At resentencing, the State argued the trial court should consider Ducas' convictions for offenses that occurred after his primary offense. The convictions resulted from the shooting of a witness to the primary offense six weeks after the primary offense. On March 29, 2009, Ducas was charged with attempted premeditated murder, tampering with a witness, and conspiracy to commit first-degree murder. On December 19, 2016, Ducas was convicted of all charges in the 2009 case, and his conviction was affirmed on direct appeal. Ducas v. State, 246 So. 3d 1235 (Fla. 3d DCA 2018).

Defense counsel argued the subsequent crimes should not be considered, and further argued that reimposition of a life sentence would be excessive given that at the time of the primary offense Ducas was a 20-year-old first time adult offender[1] and there were no injuries to the victims.

While the trial court agreed with the defense that a life sentence would be disproportionate if the court only considered the circumstances of the present case, the trial court ultimately did consider the subsequent convictions and imposed concurrent life sentences. The trial court relied on the fact that the victim in the subsequent case was a witness to the primary offense and the subsequent offenses resulted in convictions. The trial court

---

[1] The State mentioned two juvenile convictions during resentencing.

was careful to note, however, that "but for [its] consideration of the [subsequent convictions, the court] would not have given [Ducas] a life sentence" given his age at the time of the offense and the nature of the case.[2]

Ducas appealed his new sentence. Ducas argued he was entitled to a de novo resentencing without consideration of his subsequent convictions.

## LEGAL ANALYSIS

The record reflects that Ducas committed the primary offense in 2008. He was tried, convicted, and sentenced on the primary offense in 2010. In 2009, however, Ducas committed additional offenses. At the time of his resentencing on the primary offense in 2022, Ducas had been convicted of the 2009 offenses. Thus, the trial court was faced with a single issue— whether it could consider Ducas' conviction for offenses committed after the primary offense when resentencing Ducas on the primary offense. This Court must now determine whether the trial court erred in concluding that it could consider these subsequent offenses.

---

[2] We commend the trial judge for the integrity and intellectual rigor reflected in the manner he placed his sentencing considerations on the record. Although he ultimately ruled against the criminal defendant, the judge was careful to frame the legal issue very precisely, respectful of the defendant's right to seek review.

4

The issue presented is "a pure question of law. Accordingly, the proper standard of review is de novo." Norvil v. State, 191 So. 3d 406, 408 (Fla. 2016) (citing Cromartie v. State, 70 So. 3d 559, 563 (Fla. 2011)).

"Historically, in Florida and most jurisdictions, the judiciary are given the discretion to tailor a sentence appropriate to each defendant appearing in court." Ecenrode v. State, 576 So. 2d 967, 968 (Fla. 5th DCA 1991). "It is well settled that '[a] sentencing court has wide discretion regarding the factors it may consider when imposing a sentence.'" Dickie v. State, 216 So. 3d 35, 37 (Fla. 2d DCA 2017) (quoting Bracero v. State, 10 So. 3d 664, 665 (Fla. 2d DCA 2009)). See also Provence v. State, 337 So. 2d 783, 786 (Fla. 1976) ("We recognize that the constitutional parameters of the trial judge's discretion in the area of sentencing are wide indeed." (citing Specht v. Patterson, 386 U.S. 605, 608 (1967); Williams v. New York, 337 U.S. 241 (1949))).

"The sentencing court . . . must be permitted to consider any and all information that reasonably might bear on the proper sentence for a particular defendant, given the crime committed." Dickie, 216 So. 3d at 37 (quoting Howard v. State, 820 So. 2d 337, 340 (Fla. 4th DCA 2002)). A sentencing court "may consider a variety of factors, including a defendant's criminal history, employment status, family obligations, and over-all

reputation in the community." <u>Imbert v. State</u>, 154 So. 3d 1174, 1175 (Fla. 4th DCA 2015). A sentencing court's reliance on constitutionally impermissible factors, however, violates a defendant's due process rights. <u>See, e.g.</u>, <u>Rankin v. State</u>, 174 So. 3d 1092, 1096 (Fla. 4th DCA 2015); <u>Imbert</u>, 154 So. 3d at 1175-76.

The primary case at issue here is the Florida Supreme Court's decision in <u>Norvil v. State</u>, 191 So. 3d at 406, which concerned a defendant's sentence for armed burglary of a dwelling. During sentencing, the State asked the trial court to take into consideration a new charge pending against the defendant for burglary of a vehicle. <u>Id.</u> at 407-08. Relying on the new burglary charge as well as a new trespass charge against the defendant, both of which occurred while the defendant was out on bond awaiting trial for the armed burglary charge, the trial court declined to sentence the defendant as a youthful offender and instead sentenced him to 12 years in prison. <u>Id.</u>

The issue before the Florida Supreme Court in <u>Norvil</u> was "whether a trial court violated a defendant's due process rights at sentencing by considering a subsequent arrest without conviction during sentencing for the primary offense." <u>Id.</u> at 407. The Florida Supreme Court concluded that it did and went on to expressly adopt a "bright line rule for sentencing purposes,"

holding that "a trial court may not consider a subsequent arrest without conviction during sentencing for the primary offense." Id. at 410.

In reaching this conclusion, the Florida Supreme Court relied on Chapter 921, Florida Statutes, which includes the Criminal Punishment Code and governs sentencing in Florida. Id. at 408-09. The Court noted that:

> The [Criminal Punishment Code] embodies the principles that: [t]he primary purpose of sentencing is to punish the offender. Rehabilitation is a desired goal of the criminal justice system but is subordinate to the goal of punishment. The penalty imposed is commensurate with the severity of the primary offense and the circumstances surrounding the primary offense. The severity of the sentence increases with the length and nature of the offender's prior record.

Id. at 409 (quoting §§ 921.002(1)(b), (c), and (d), Fla. Stat. (2010)).

The Court also noted that the sentencing judge ordered a presentencing investigation report pursuant to section 921.231(1), Florida Statutes, the purpose of which "is to provide the sentencing court with information that is helpful in determining the type of sentence that should be imposed." Id. (citing Fla. R. Crim. P. 3.712(a)). "This report must include, inter alia, the offender's prior record of arrests and convictions." Id. (citing § 921.231(1)(c), Fla. Stat. (2010)).

Based on these statutory provisions, the Florida Supreme Court concluded that "the arrests and convictions" considered by a trial judge in

7

sentencing must, "by definition," occur "prior to the time of the primary offense" and not after the primary offense. Id. (quoting § 921.0021(5), Fla. Stat. (2010)). Indeed, the Florida Supreme Court emphasized, "the terms 'primary offense' and 'prior record,' which are included in the [Criminal Punishment Code's] sentencing principles, do not include a subsequent arrest and its related charges." Id. (citing §§ 921.0021(4), (5), Fla. Stat. (2010)). The Florida Supreme Court reasoned that "[C]hapter 921 is unambiguous and specifically states that prior arrests and convictions, not subsequent arrests and their related charges, are appropriate sentencing considerations." Id. at 409-10.

Following Norvil's proclaimed "bright line rule" against considering "a subsequent arrest without conviction during sentencing for the primary offense," the Fourth District in Fox v. State, 281 So. 3d 498 (Fla. 4th DCA 2019), faced the following question: "If a defendant commits, but is not convicted of, a collateral crime before committing the instant crimes, may the sentencing court still consider the collateral crime in rendering sentence for the instant crimes if the defendant has been convicted of the collateral crime before sentencing for the instant crimes?" Id. at 501. The Fourth District answered in the affirmative. Id.

8

In reaching this conclusion, the Fourth District determined that <u>Norvil</u> was distinguishable because it "involved a subsequent arrest without conviction," whereas the defendant in <u>Fox</u> was convicted of the collateral crimes before he was sentenced for the crimes at issue. <u>Id.</u> at 500 (internal quotation marks omitted). The Fourth District acknowledged that <u>Norvil</u> did "lump" arrests and convictions together when discussing its rationale, but nevertheless concluded, "we presume such language was directed to the factual situation at issue in <u>Norvil</u>, that is, a subsequent arrest without conviction." <u>Id.</u> at 501 (internal quotation marks omitted).

Nevertheless, <u>Fox</u> adopted a similar reasoning to <u>Norvil</u>, relying on the Criminal Punishment Code's provision permitting a sentencing court to consider an offender's "prior record." <u>Id.</u> The court noted that the Criminal Punishment Code defines "prior record" as "a conviction for a crime committed by the offender, as an adult or a juvenile, prior to the time of the primary offense," and applied the "last antecedent doctrine" to conclude that section 921.0021(5)'s antecedent phrase, "committed by the offender, as an adult or juvenile, prior to the time of the primary offense," modified only the immediately preceding term—"crime"—and not the earlier preceding term "conviction." <u>Id.</u> (citing § 921.0021(5), Fla. Stat. (2016)). As a result, the court concluded that for the sentencing judge to consider the collateral crime when

9

entering a sentence on the primary offense, the defendant needed to (1) have committed the collateral crime before committing the primary offense; and (2) be convicted of the collateral crime before being sentenced for the primary offense. Id. It was not necessary that the defendant be convicted of the collateral crime before the defendant committed the primary offense. Id.

Barnes v. State, 227 So. 3d 216 (Fla. 5th DCA 2017), in turn, is the most factually analogous case argued on appeal. In that case, the State at the sentencing hearing filed copies of judgments and sentences in three other cases for crimes the defendant committed after he committed the crimes at issue. Id. at 217. As in this case, the State in Barnes conceded that the subsequent convictions could not be scored on the Criminal Punishment Code scoresheet but argued that the trial court could consider them in determining whether a life sentence was appropriate. Id.

The sentencing hearing in Barnes, however, concerned a crime the defendant committed as a juvenile and was therefore governed by section 921.1401, Florida Statutes. Id. As a result, the Fifth District deemed the defendant's reliance on Norvil "misplaced." Id. at 218. While the court acknowledged "that, under the Criminal Punishment Code, a trial court may not consider a subsequent arrest without conviction during sentencing for the primary offense," citing Norvil, the court noted that section 921.1401(2)

10

allowed a trial court to consider the "possibility of rehabilitation in determining whether to impose a life sentence." Barnes, 227 So. 3d at 218. The court concluded that, "[a]t a minimum, [defendant's] subsequent criminal behavior with convictions [was] relevant to the possibility of his rehabilitation." Id. See also Davis v. State, 268 So. 3d 958, 964 (Fla. 1st DCA 2019), approved, 332 So. 3d 970 (Fla. 2021) ("As our supreme court has recognized, '[t]o an unspecified degree, the sentencing judge is obligated to make his decision on the basis, among others, of predictions regarding the convicted defendant's potential, or lack of potential, for rehabilitation.'" (quoting Simmons v. State, 419 So. 2d 316, 320 (Fla. 1982))).

Here, the trial court also deemed Norvil distinguishable because Ducas had been convicted of the subsequent offenses, rather than simply arrested without a conviction as in Norvil. Instead, the trial court relied on Barnes, concluding that the fact that Ducas was not a juvenile and section 921.1401 was not a consideration did not require a different outcome because rehabilitation was still a relevant consideration when sentencing an adult. See § 921.002(1)(b), Fla. Stat. (2024) ("The primary purpose of sentencing is to punish the offender. Rehabilitation is a desired goal of the criminal justice system but is subordinate to the goal of punishment.").

11

We agree with this approach. While <u>Norvil</u>'s reasoning seems to place significant emphasis on the temporal issue—"prior" vs. "subsequent"—the Florida Supreme Court ultimately chose to limit its "bright line rule" to the facts presented, holding that "a trial court may not consider <u>a subsequent arrest without conviction</u> during sentencing for the primary offense." <u>Norvil</u>, 191 So. 3d at 410 (emphasis added). Because here we have a subsequent arrest <u>with</u> conviction, the Florida Supreme Court's holding in <u>Norvil</u> did not bar the trial court's consideration of same.

Furthermore, <u>Barnes</u> is correct that, "[a]t a minimum, [a defendant's] subsequent criminal behavior <u>with</u> convictions is relevant to the possibility of his rehabilitation." <u>Barnes</u>, 227 So. 3d at 218. <u>See also</u> <u>Davis</u>, 268 So. 3d at 964 (noting that a "sentencing judge is obligated to make his decision on the basis, among others, of predictions regarding the convicted defendant's potential, or lack of potential, for rehabilitation") (quoting <u>Simmons</u> 419 So. 2d at 320). <u>Norvil</u> did not address whether subsequent arrests with convictions might be relevant to a defendant's potential for rehabilitation and therefore does not preclude the Fifth District's conclusion in <u>Barnes</u>. Here, a conscientious judge trying to measure a defendant's potential for rehabilitation could not ignore the fact that the defendant was convicted of trying to murder a witness to his crime.

Finally, the consideration of a subsequent conviction does not present the same due process concerns as the consideration of a subsequent arrest without conviction. As the Florida Supreme Court recently noted in State v. Garcia, 346 So. 3d 581, 586 n.5 (Fla. 2022), while a sentencing judge may consider a defendant's conduct when proven by a preponderance of the evidence, the consideration of an arrest, standing alone, raises due process concerns because it is only supported by a determination of probable cause. A conviction, however, concerns a defendant's conduct that has been proven beyond a reasonable doubt, thus eliminating the due process concerns presented by the consideration of an arrest without conviction.

Notably, the United States Supreme Court has affirmed that when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing "in light of the 'federal sentencing framework' that allows sentencing judges to consider the 'fullest information possible concerning the defendant's life and characteristics.'" Concepcion v. U.S., 597 U.S. 481, 492-93 (2022) (quoting Pepper v. U.S., 562 U.S. 476, 488, 490 (2011)).

Accordingly, the trial court did not err in considering Ducas' subsequent conviction on resentencing.

Affirmed.